JOHN W. CARTER'S (dependent's) CASE.

Suffolk.    January 15, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Workmen's Compensation Act,* Dependency.

In a claim under the workmen's compensation act by the daughter of a deceased
employee whose death resulted from an injury arising out of his employment,
where it appears that the widow of the employee was not living with him at the
time of his death and makes no claim as a dependent, that the daughter was
over eighteen years of age, that she lived with her mother and, although too ill
to go out to work, helped her mother in running the household, that for a year
and a half before her father's death her father sent to her from $4 to $5 a week,
that this was her only income except pay for two weeks' work so small
that it may be disregarded, and that she had saved $100, apparently from the
money given her by her father, of which since her father's death from $50 to
$60 had been used, it can be found that the daughter at the time of her father's
death was wholly dependent upon him for support.

---

LORING, J. The record of the Industrial Accident Board begins with a statement that John W. Carter, the employee, received an injury arising out of his employment by an employer insured by the Travelers Insurance Company from which he died; and that the only question was one of dependency. It continues in these words:

"It appeared in evidence that the daughter, Doris Pauline Carter, was living in Portland, Maine, with the mother at the time of the father's death; that her father and mother had not been living together for three years; that she was eighteen years old on the 20th day of October, 1913, and that she was the daughter of John W. Carter. For three years prior to her father's death she had worked intermittently substituting for a florist. Three years before her father's death she had been a waitress in the English Tea Room in Portland, but she could not stay because her health was not good. Two years before her father's death she went to a commercial school for five months, and her father paid $10 a month for her schooling and sent her about $4 a week. She left that school in June, 1912, and up to the time that her father died, in 1913, she had worked only one week in the florist's store, and during that year and a half she had substituted at Wilson's, a Portland grocery, for a week as clerk; the rest of the time she was at home sick. She was living at home with her mother, who boarded a woman in return for the rent. She and her mother divided the table expenses. Her father sent her $4 to $5 a week, and she supported herself with this amount — she bought her clothing and helped her mother. She had no other income except the money that her father sent her, and she was not able to work at the time of the hearing. She further testified that when her father died she had $100 saved in the bank. No information was obtained as to where the $100 came from. Of this amount she had spent $50 or $60 at the time of the hearing. Besides that small amount in the bank, she hasn't anything and is not able to work. She has heart trouble and acute indigestion.

"The mother filed a statement, signed before a notary public, in which she stated that she was not dependent upon her husband at the time of his death. She had put in a claim prior to this, that she was dependent.

"These facts are all the material evidence that there is in the case.

"Mrs. Carter, the widow, received the notification of the board to be present at the time of the review, but was not present nor did she intend to be, as the board is advised.

"The board finds, on this evidence, that the arbitration committee did not err in its finding of fact, and it affirms and adopts the finding of the committee of arbitration. That finding was: 'We find, therefore, as a fact, that Doris Pauline Carter was the daughter of John W. Carter; that while she is over eighteen years of age, she is physically incapacitated and unable to work and that at the time of her father's death she was wholly dependent upon him, and we find that she is entitled to recover from the Travelers Insurance Company, the insurer in this case, the sum of $7 a week for a period of three hundred weeks, making a total of $2,100, beginning with the date of the injury, December 20, 1913, and that her mother is not a dependent on her own sworn statement, and that the daughter alone is entitled to recover under the workmen's compensation act as being wholly dependent upon the deceased John W. Carter.'"

The learned counsel for the insurer has based much of his argument on an abstract of the evidence taken before the arbitration committee and states that the case was heard by the board upon that abstract of evidence. That is contradicted by the record. The record states that the case was heard by the board on the evidence set forth above.

Apart from the fact that the daughter had savings amounting to $100 at the time of her father's death, there can be no question as to the evidence warranting the finding that she was wholly dependent upon the deceased. The case is the case of a girl fifteen years of age having to give up work as a waitress on account of bad health three years before her father dies. For a year she does nothing. Then she goes to a commercial school for five months. Her father paid for the schooling and for the five months gave her $4 a week. For the remaining year and a half before her father's death she is too ill to work except for a week on each one of two separate occasions. On these occasions she worked as a substitute once at a florist's and once in a grocery store. "The rest of the time she was at home sick." During this period of a year and a half she lived with her mother. The rent was paid by a woman in return for her board, the mother and daughter divided the "table

expenses," and the daughter, although too ill to go out to work, helped her mother in running the household. The deceased gave the daughter $4 to $5 a week during this year and a half. This was her only income.

There being no evidence as to the origin of the $100 saved by the daughter, it may be taken to have been saved from the money paid her by her father. The question comes to this: Where a daughter for three years before her father's death has had no income except money allowed her by her father and the compensation for two weeks which is so small that it may be disregarded, and is too ill to work, does the fact that at her father's death she had $100 saved from the money given her by her father prevent a finding that she was wholly dependent on her father at the time of his decease? If the sum saved had been sufficient to constitute a means of support or a partial means of support, the existence of the savings would prevent a finding to that effect. But the income from the savings here in question is at the most $4 or $5 a year, and if the principal is used it would last so short a time that it cannot be taken to be a means of even partial support. It appeared at the hearing that since the father's death from $50 to $60 of the principal had been used.

We are of the opinion that the finding was authorized; and the entry must be

*Decree affirmed.*

*L. C. Doyle,* for the insurer.

*H. T. Richardson,* for the dependent daughter, submitted a brief.