**Michael KALESNICK, Plaintiff,**

v.

**SEACOAST OCEAN SERVICES, INC., Defendant.**

**Civil No. 94–45–P–H.**

United States District Court, D. Maine.

Sept. 23, 1994.

David J. Berg, Michael B. Latti, Latti Associates, Boston, MA, for plaintiff.

Leonard W. Langer, Thompson, Clough, Hirshon & Langer, Portland, ME, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

A Maine Workers' Compensation Board approval of an employer/employee agreement to pay specific permanent impairment benefits under the Maine Workers' Compensation Act is—under Maine law—a final judgment that the employee is covered by the Maine Workers' Compensation Act. The Maine statute excludes federal maritime employ-ment from its coverage. As a result, Michael Kalesnick's lawsuit here seeking damages from his employer under the federal Jones Act and other federal maritime laws is precluded by the doctrine of res judicata.

On July 17, 1991, Michael Kalesnick was working for Seacoast Ocean Services, Inc. ("Seacoast") on one of its twenty-foot aluminum skiffs. Kalesnick was attempting to boom off an oil tanker. While Kalesnick was leaning over the side of the skiff to hook the magnet to the tanker, a wake from a passing ship lifted the skiff, causing Kalesnick's head and body to strike the tanker. He sustained injuries to his head and neck as a result.

Following his injuries, Kalesnick claimed and received compensation benefits under the Maine Workers' Compensation Act. Indeed, three weeks after his accident, Seacoast's insurer began to make voluntary payments to him. Later, the insurer contested Kalesnick's right to continue receiving benefits, arguing that he was no longer disabled. The Maine Workers' Compensation Board rejected this contention. The insurer also contested the degree of Kalesnick's permanent impairment. After mediation, the parties reached an agreement with respect to permanent impairment benefits for Kalesnick under the Maine Workers' Compensation Act. This agreement was presented to and approved by the Workers' Compensation Board.

## DISCUSSION

■ I assume that agreements for compensation presented to the Maine Workers' Compensation Board for approval receive only routine review in light of the press of other Board business. Nevertheless, it is clear under Maine law that such approval is a final adjudication. As Maine's Law Court has announced, "commission review of compensation agreements cannot be characterized as a 'ministerial' function, even though the substantial number submitted for approval tends to make the process a routine one. The approval has the effect of a final adjudication." *Wilner Wood Prods. Co. v. Moyse,* 466 A.2d 1257, 1260 n. 6 (Me.1983). Kalesnick maintains that no adversarial hearing was held before the Board and that Seacoast

never argued that Kalesnick was not an employee under the Act or that he was a maritime worker not entitled to benefits. I accept those assertions. Nevertheless, no approval of benefits under the Maine Workers' Compensation Act is possible unless the parties and the Board believe that the person is eligible. As Maine's Law Court has stated in *Dufault v. Midland–Ross of Canada, Ltd.,* 380 A.2d 200, 205 (Me.1977) (citations omitted) (emphasis added), "an approved agreement for compensation has the force of a final adjudication to the extent of the facts agreed upon and the conditions considered by the parties as a basis for the compensation to be paid. Applying this principle, we have held that an approved agreement for compensation *conclusively establishes the existence of an initial compensable injury.*" [1]

■ Although the parties may never have discussed the details of Kalesnick's eligibility under the Maine Act, the conclusion is unavoidable that seeking Board approval was an assertion of eligibility. Maine Workers' Compensation benefits are available only to an "employee" as defined under the statute. The definition *excludes* "[p]ersons engaged in maritime employment or in interstate or foreign commerce who are within the exclusive jurisdiction of admiralty law or the laws of the United States." 39–A M.R.S.A. § 102(11)(A)(1) (mirroring the definition of exclusive federal jurisdiction in *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 218, 37 S.Ct. 524, 530, 61 L.Ed. 1086 (1917)). Thus, the Board approval is implicitly a conclusive determination that Kalesnick is not within the

exclusion. Kalesnick nowhere disputes that such a conclusion, if entitled to res judicata effect, would preclude this federal court action. Instead, his only argument on res judicata is that the issue was not litigated or that no final judgment on the merits was ever rendered, and thus that res judicata does not apply.

■ The Maine standards for application of principles of res judicata are clear. In Maine, the doctrine requires that the same parties or their privies be involved in both actions, that a valid final judgment was entered in the prior action, and that the matters presented for decision were *or might have been* litigated in the prior action. *Department of Human Servs. v. Richardson,* 621 A.2d 855, 856 (Me.1993). Clearly, this case meets all those criteria: the parties are identical; the Board approval is a valid final adjudication under the Maine Law Court decisions I have cited; and Kalesnick's status as a nonmaritime employee could have been litigated—indeed was implicit—in the earlier determination approving benefits under the Maine Workers' Compensation Act.

■ This is not a case where an employee only sought workers' compensation benefits, or even where an employer only voluntarily paid such benefits. *Cf. Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). Instead, it is a case where there was a contest and an official approval by the Maine Workers' Compensation Board that, according to Maine law, was a final adjudication of eligibility.[2] According-

1. The Law Court has said substantially the same thing in varying language on a number of occasions. *See, e.g., Maxwell's Case,* 119 Me. 504, 507–08, 111 A. 849 (1921) (parties' agreement has the "binding force of a judgment" binding the parties "as to the conditions covered by them as a basis for the compensation agreed upon"); *Foster's Case,* 123 Me. 27, 29, 121 A. 89 (1923) (approved agreement "has the force of a judgment, and is final and binding to the extent of the facts agreed upon and the conditions covered by them as a basis for the compensation to be paid"); *Healey's Case,* 124 Me. 54, 56, 126 A. 21 (1924) (compensability "was finally decided when, on being officially approved, the compensation agreement became as effective as a judicial judgment" and "not reexaminable upon the merits"; "whether established correctly on general principles or not, so long as the facts on

which the awarding of compensation was predicated continued to be the facts in the case, so long did that which was established continue to be the law of the case"); *Crowley's Case,* 130 Me. 1, 3, 153 A. 184 (1931) (an approved agreement "has the force of a judgment and is final and binding to the extent of the facts agreed upon and the conditions covered by them as a basis for the compensation to be paid").

2. *See Vilanova v. United States,* 851 F.2d 1, 5–6 (1st Cir.1988) (although acceptance of Longshore and Harbor Workers' Compensation Act benefits paid voluntarily does not bar suit under the Federal Tort Claims Act, a settlement approved by the deputy commissioner of the Department of Labor amounts to collateral estoppel); *Sharp v. Johnson Bros. Corp.,* 973 F.2d 423, 426 (5th Cir.1992) (a settlement agreement approved by

ly, I "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (applying the full faith and credit statute, 28 U.S.C. § 1738). *See also Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982).[3] By approving the payment of benefits, Maine's Workers' Compensation Board implicitly concluded that Kalesnick was *not* a Jones Act seaman or maritime worker entitled to federal benefits.

### CONCLUSION

Accordingly, it is unnecessary to rule on Seacoast's other arguments. The defendant's motion for summary judgment is GRANTED on the basis of res judicata.

So ORDERED.

---

an administrative law judge is a formal award which, even though coverage was never litigated in adversarial proceeding, does bar Jones Act relief); *Hagens v. United Fruit Co.*, 135 F.2d 842, 843 (2d Cir.1943) (same). *But see Biggs v. Norfolk Dredging Co.*, 360 F.2d 360 (4th Cir.1966), *superseded by* 33 U.S.C. § 905(b). The matter is discussed at length in 4 Arthur Larson, *The Law of Workmen's Compensation* § 90.50–51(c) (1993) and Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 6–52 (2d ed. 1975). Larson concludes that an administrative approval of benefits should only be res judicata where the

eligibility issue was actually litigated. Larson, *supra,* at § 90.51(c). Maine's law of res judicata, however, is broader and includes matters that "might have been litigated." *Richardson,* 621 A.2d at 856.

3. There is no particular element of the federal claims here that would justify ignoring the res judicata effect of Maine's final determination. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 386, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985).