(No. 55304.—

JOYCE MORGAN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mt. Vernon Memorial Gardens, Inc., Appellee).

*Opinion filed March 29, 1982.*

Charles W. Hendrix, of Hendrix & Lierman Law Office, P.C., of Champaign, for appellant.

Glenn E. Moore, of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Van Michael Morgan, the deceased husband of the claimant in this workers' compensation case, was killed on March 29, 1979, in a farm accident. He had entered a silo, apparently in the process of feeding livestock, when the sileage caved in and he was suffocated. The arbitrator's award of compensation to the widow was reversed by the Industrial Commission, and the circuit court of Jefferson County confirmed the Commission. Claimant appealed under Rule 302(a)(2). 73 Ill. 2d R. 302(a)(2).

Decedent was employed by Gene Wells, the farm owner, as a general laborer. The operation of the farm was not automatically covered by the Workmen's Compensation Act, for it required considerably less than 500 man days per quarter (Ill. Rev. Stat. 1977, ch. 48, par. 138.3(19)), nor had the owner elected to come under the coverage of the Act. Decedent also worked for Mt. Vernon Memorial Gardens, Inc., an Illinois corporation, which operated a cemetery a few miles from the Wells' farm. Mr. Wells was president of this corporation, but the record does not indicate its ownership. The secretary for Memorial Gardens kept the books for both the corporation and the farm. Except for occasional employment of part-time help, decedent was the only employee of the farm. There were two full-time employees of Memorial Gardens, and assistants would be hired in the summer. Decedent performed caretaking duties (*i.e.,* mowing, digging graves)

at the cemetery, but apparently was not considered a full-time employee of Memorial Gardens. Mr. Wells did much of the maintenance work at the cemetery himself.

Decedent and his family lived on the Wells' farm in a house provided them rent free. Mr. Wells also paid the medical expenses of the Morgan family. Decedent was allowed to use the farm trucks, as needed, and Mr. Wells paid maintenance and gasoline expenses on them, as well as the cost of welding classes for decedent. In addition to his general duties on the farm, decedent raised some hogs of his own, together with those of his employer. He also did welding for others in the area, for which he charged, and he sold Mason shoes on a part-time basis.

Decedent received a weekly paycheck of $180 issued by Mt. Vernon Memorial Gardens, Inc. The accountant testified that decedent was paid through Memorial Gardens, beginning in 1975, in order to simplify the reporting and withholding procedures under Federal tax regulations. These regulations treated farm employees differently from corporation employees and, since decedent worked for both and the requirements could be met by the more frequent reporting required of corporations, he had requested the bookkeeper to pay him through the corporation. Since 1975 the corporation prepared his W-2 form and was identified on that form as "employer." However, the farm was to reimburse the corporation at the rate of $400 per month for decedent's salary. Although over the four years in question the records in evidence indicate that the full amount (*i.e.*, $4,800 yearly) was reimbursed only once, tax returns for the corporation in each of those years indicate that it did not claim as employee expense any amount for which it was reimbursed. There were no records introduced to show how decedent was paid prior to 1975, but the accountant testified that Mr. Wells and not Memorial Gardens made out the W-2 forms then.

The Industrial Commission found that on the day of decedent's death Memorial Gardens was subject to the Workmen's Compensation Act and that a relationship of employer and employee existed between decedent and the corporation. However, it held that the claimant had failed to prove that the accident arose out of and in the course of that employment. We agree with the circuit court that this holding is not against the manifest weight of the evidence.

Claimant argues that this court's decisions in *Friend v. Industrial Com.* (1968), 40 Ill. 2d 79, and *Harry Fleming Washer Service v. Industrial Com.* (1966), 36 Ill. 2d 272, require a different result. In both of those cases this court upheld an award of compensation to an employee of an otherwise covered business who was injured while performing duties which were not in the usual course of business of that employer. In both of those cases, however, there was a single employer, and the court held that the work being performed at the time of the accidents was so "enmeshed with the usual business of the employer" that the injuries were compensable. 40 Ill. 2d 79, 81; 36 Ill. 2d 272, 274-75.

In contrast to those cases, decedent was employed by two distinct employers, notwithstanding the fact that Gene Wells was also president of Mt. Vernon Memorial Gardens, Inc., from which decedent's paychecks came. Although there was no testimony concerning the amount of time that he worked at the cemetery in comparison to the time he worked on the farm, an inference could be drawn from the fact that the $400 monthly reimbursement was about one-half his money wages that no more than half of his time was spent working at the cemetery. There is no doubt that he was receiving considerable nonmonetary compensation for his farm work. There is also no doubt that when the accident occurred he was performing duties solely related to his employment on the

506

farm and wholly unrelated to any duties he had at the cemetery.

On these facts we cannot say that the Industrial Commission's determination that the claimant failed to prove that the accident arose out of and in the course of decedent's employment with Mt. Vernon Memorial Gardens, Inc., was against the manifest weight of the evidence. (*Siens v. Industrial Com.* (1981), 84 Ill. 2d 361; *cf. Illinois Institute of Technology v. Industrial Com.* (1977), 68 Ill. 2d 236, 246.) Accordingly, the judgment of the circuit court of Jefferson County is affirmed.

*Judgment affirmed.*